**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THEODORE M.,[1] | ) Case No. CV 20-4382-JPR |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) **AFFIRMING COMMISSIONER** |
| | ) |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security supplemental security income benefits ("SSI"). The matter is before the Court on the parties' Joint Stipulation, filed April 2, 2021, which the Court has taken under submission without oral argument. For the reasons discussed below, the Commissioner's decision is affirmed.

---

[1] Plaintiff's name is partially redacted in line with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

## II. BACKGROUND

Plaintiff was born in 1972. (Administrative Record ("AR") 101.) He completed some high school (AR 76, 239)[2] and worked as a telephone solicitor (AR 78-80).

In September 2016, he applied for SSI. (AR 71, 113, 214-25.) The Commissioner denied his claim (AR 101-13) and rejected his request for reconsideration (AR 115-27). He requested a hearing before an administrative law judge. (AR 145-48.) One was held on December 14, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (See AR 67-100.) On April 8, 2019, the ALJ found that he was not disabled and could perform his past relevant work as a telephone solicitor. (AR 24-25.) Plaintiff requested review from the Appeals Council, which it denied on March 16, 2020. (AR 1-6, 210-12.) This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It

---

[2] Plaintiff testified that he completed "ninth or tenth" grade, "something like that" (AR 76), but in an Adult Disability Report he said he finished 11th grade (AR 239).

2

is "more than a mere scintilla but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for Social Security purposes if they can't engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, he is not disabled and the claim must be denied. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 416.920(a)(4)(ii) & (c).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix 1; if so, disability is presumed and benefits are awarded. § 416.920(a)(4)(iii) & (d).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[3] to perform his past work; if so, he is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving he cannot perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945(a)(1); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

4

work, the Commissioner bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy, the fifth and final step of the sequential analysis. § 416.920(a)(4)(v).

B. <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 19, 2016, his application date.[4] (AR 19.) At step two, he concluded that Plaintiff had severe impairments of "status post gunshot wounds, anxiety, and depression." (<u>Id.</u>) At step three, he found that Plaintiff's impairments did not meet or equal a Listing. (AR 20-21.)

At step four, he determined that Plaintiff retained the RFC to perform "medium work" with some limitations:

> [He] can lift and carry 50 pounds occasionally and 25 pounds frequently. He can stand and walk for 6 hours in an 8-hour workday. The claimant can sit about 6 hours in an 8-hour workday. He is able to push and pull an unlimited amount other than as shown for lifting and carrying. The claimant can frequently balance, stoop, kneel, crouch, crawl, and climb. He can frequently interact with coworkers and the public.

(AR 21.)

The ALJ accepted the VE's testimony that Plaintiff could return to his past work as a telephone solicitor "as actually and

---

[4] The ALJ also found that Plaintiff had "not engaged in substantial gainful activity since the alleged onset date" (AR 19), which was July 13, 2016 (AR 71, 217).

5

generally performed." (AR 24-25.)  Thus, he was not disabled. (AR 25.)

**V.   DISCUSSION**

Plaintiff asserts that the ALJ failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles. (See J. Stip. at 4-6.) For the reasons discussed below, the VE's testimony did not conflict with the DOT. The ALJ therefore did not err.

A.   <u>Applicable Law</u>

To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the DOT. SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (in making disability findings, SSA relies "primarily on the DOT . . . for information about the requirements of work in the national economy" and "may also use VEs . . . at these steps to resolve complex vocational issues"); SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982) ("The [DOT] descriptions can be relied upon — for jobs that are listed in the DOT — to define the job as it is <u>usually</u> performed in the national economy." (emphasis in original)).

When a VE provides evidence about a job's requirements, the ALJ must ask about "any possible conflict" between that evidence and the DOT. See <u>Gutierrez v. Colvin</u>, 844 F.3d 804, 807 (9th Cir. 2016) ("If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled."); see also SSR 00-4p, 2000

WL 1898704, at *4. The conflict must be "obvious or apparent" to trigger the ALJ's obligation to inquire further, and the inquiry is "fact-dependent." Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017) (citing Gutierrez, 844 F.3d at 808).

B. Relevant Background

1. The VE's testimony

The ALJ asked the VE to consider a hypothetical person limited to "frequent contact with co-workers and the general public," among other constraints. (AR 95-96.) The ALJ asked whether that hypothetical person could perform Plaintiff's past work as a "telephone solicitor," see DOT 299.357-014, 1991 WL 672624 (Jan. 1, 2016). (AR 96.) "Yes," the VE testified. (Id.) When asked by the ALJ whether his testimony was consistent with the DOT, the VE said, "Yes, as well as my professional work experience in placement." (AR 97.) In his decision, the ALJ accepted and expressly relied on the VE's testimony. (See AR 24-25.)

2. The telephone-solicitor job

According to the DOT, a telephone solicitor, also known as a telemarketer, performs these job duties:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and

```
               telephone   directories.    May   type   report   on   sales
               activities. May contact [drivers] to arrange delivery of
               merchandise.
```
DOT 299.357-014, 1991 WL 672624. The occupation requires workers to "frequently" talk and hear. Id. "Frequently" means up to two-thirds of the workday. Id.

At the hearing, Plaintiff testified that when he worked as a telephone solicitor, he did not do any actual "customer service work," such as "tak[ing] complaints, resolv[ing] billing issues, . . . resolv[ing] issues at all." (AR 95.) Although some of his phone-solicitor jobs were apparently part time (see, e.g., AR 78), others, including his most recent, in 2014, were full time (AR 79, 240). At one of his phone jobs, apparently "all" he did was "call[] people to see if they wanted solar windows." (AR 79.)

C. Analysis

In Plaintiff's view, the telephone-solicitor job requires more than frequent contact with the public. (J. Stip. at 5-6.) So, he claims, the VE's testimony that someone limited to frequent contact with others could work as a telephone solicitor conflicted with the DOT. (Id.) By failing to resolve that conflict, he argues, the ALJ erred. (Id.)

But no obvious or apparent conflict exists. True, the telephone-solicitor duties include calling prospective customers, quoting prices, persuading customers, referring orders to coworkers, and contacting drivers. DOT 299.357-014, 1991 WL 672624. These duties require contact with others. But the remaining duties — recording names, addresses, purchases, and

reactions of prospects solicited; keying data; developing lists of prospects; and typing reports — do not. Id. And the DOT notes that a telephone solicitor need only "frequently" hear and talk, which necessarily means that a worker need only frequently interact with others. Id. Thus, the DOT's description matches the VE's testimony.[5]

Plaintiff resists this conclusion and urges this Court to rely on "common experience and understanding" to find a conflict. (J. Stip. at 5.) "[T]he lay understanding of this occupation," he argues, "is that the essential, core job function is to interact with, assist, and/or manipulate the public." (Id. (citing Gutierrez, 844 F.3d at 808).) In Gutierrez, the Ninth Circuit found no obvious or apparent conflict between the DOT's statement that cashiers engage in frequent reaching and expert testimony that someone unable to reach overhead could perform the job. Gutierrez, 844 F.3d at 807-09. Common experience guided the court: "[A]nyone who's made a trip to the corner grocery

---

[5] As noted above, the ALJ found that Plaintiff could perform the telephone-solicitor job as actually and generally performed. (AR 25.) Based on the limited information in the record, the job as Plaintiff actually performed it did not differ significantly from the DOT's description. (Compare AR 77-79, 91-93, 95, with DOT 299.357-014, 1991 WL 672624; but see AR 79 (Plaintiff testifying that "all" he did in one phone-solicitor job was "call[] people").) But even if the ALJ erred in finding that Plaintiff could still do the job as actually performed, any error was harmless because he clearly could do the work as generally performed. See Plischke v. Colvin, No. 3:13-cv-05607-KLS., 2014 WL 2711824, at *6 (W.D. Wash. June 16, 2014) (finding any error in ALJ's holding that plaintiff could perform past work as actually performed harmless because she could perform work as generally performed); Jones v. Colvin, No. CV 12-4473-SP., 2013 WL 1752411, at *3 (C.D. Cal. Apr. 22, 2013) (same).

9

store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." Id. at 808.

Common experience here supplies little guidance. The average person sometimes fields calls from telemarketers. But that is it. Unlike observing a cashier, few people have seen a telemarketer working throughout the day. Even fewer have observed that worker long enough to determine whether the typical telemarketer constantly — not just frequently — interacts with the public and others.

Moreover, the law recognizes that the telephone-solicitor job requires "frequent" such contact. See, e.g., Lee v. Comm'r of Soc. Sec., No. 1:13-cv-01054-SAB., 2014 WL 4374260, at *9 (E.D. Cal. Sept. 3, 2014) ("Common sense would suggest that a job as a telemarketer would involve frequent interaction with the public."); see also Adams v. Astrue, No. CIV S-09-2437 DAD (TEMP)., 2011 WL 476432, at *4 (E.D. Cal. Feb. 4, 2011) ("It is apparent from the DOT's description of the duties involved with [telephone solicitor] that frequent interaction with the public and supervisors is required.").

Because no obvious or apparent conflict exists, the ALJ did not err by failing to elicit more testimony from the VE.[6]

---

[6] Because the Court finds no error, it need not address the Commissioner's alternative argument that Plaintiff forfeited his claim. (See J. Stip. at 7-8); Hanbey v. Astrue, 506 F. App'x 615, 616 (9th Cir. 2013) (declining to address waiver argument because even if plaintiff preserved issue, he lost on merits).

10

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision denying Plaintiff SSI benefits, DENYING Plaintiff's request for remand, and in the Commissioner's favor.

DATED: June 28, 2021

/s/ Jean Rosenbluth
JEAN ROSENBLUTH
U.S. Magistrate Judge